UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KINSALE INSURANCE COMPANY,

    Plaintiff,

v.                                      CASE NO:

CITADEL CONSULTING
GROUP, LLC,

    Defendant.

_____

## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

KINSALE INSURANCE COMPANY ("KINSALE") files suit against CITADEL CONSULTING GROUP, LLC ("Citadel"), and in support alleges:

## NATURE OF THE ACTION

1. This is an action for declaratory relief under 28 U.S.C. § 2201 and for reimbursement of fronted deductibles. A number of patients and residents made claims against Citadel for bodily injury that they allegedly suffered because of Citadel's negligence. Citadel tendered those claims to Kinsale for coverage under a liability insurance policy that it purchased from Kinsale.

2. Under the policy, Citadel has significant deductible obligations before Kinsale is obligated to pay in excess of each deductible obligation. Even then, the amount of coverage that Citadel purchased may be insufficient to resolve all the claims that have been made against Citadel.

3. Under the circumstances, Citadel approached Kinsale about "buying out" the professional liability coverage in exchange for a sum certain. Kinsale accepted. After stalling for considerable periods of time, Citadel reneged on the settlement by refusing to execute a formal settlement document.

4. Kinsale has been forced to initiate this action to establish that the parties entered into a binding settlement to "buy out" the professional liability coverage or, alternatively, to the extent there is no settlement, to establish Citadel's deductible obligations for all the claims that it tendered to Kinsale, and to establish the limits of coverage Kinsale will pay after Citadel satisfies its deductible obligations.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between plaintiff and defendant, and because the amount in controversy exceeds $75,000, exclusive of attorney's fees and costs.

6. Venue is proper in this district because at issue is an insurance contract that Citadel purchased from Kinsale in Brooklyn, New York, and that Kinsale issued and delivered to Citadel in Brooklyn, New York so that "a substantial part of the events … giving rise to the claim occurred in this district." 28 U.S.C. § 1391(b)(2).

7. All conditions precedent occurred, were performed, or were waived.

## THE PARTIES

8. Kinsale is an Arkansas corporation with its principal place of business in Richmond, Virginia. For this action, Kinsale is a foreign, eligible excess lines insurer that issued an insurance policy to Citadel as the Named Insured.

9. Citadel is a limited liability company that was formed in New York, and has its principal place of business in New York. Citadel owns and operates a number of nursing and rehabilitation facilities. Leopold Friedman is Citadel's sole member and is a resident of New York.

**THE POLICY**

10. Citadel purchased a new, surplus lines liability insurance policy from Kinsale bearing Policy No. 0100122595-0 and effective for the period from 07/24/2020 to 7/24/2021.[1] The policy was issued and delivered to Citadel at 1000 Gates Avenue, 5th Floor in Brooklyn, New York. A copy of the policy is attached as Exhibit "A."

11. Before the policy was issued, all terms and provisions of the policy were presented to Citadel in a Quote, including the deductible and the Each Claim Limit, which Citadel accepted.

12. Before the policy was issued, all terms and provisions of the policy were also presented to Citadel in a Binder, including the deductible and the Each Claim Limit, which Citadel accepted.

13. As indicated on the Declarations page, for Professional Liability, the policy has an Each Claim Limit of $100,000 and an Aggregate Limit of $300,000.

14. As also indicated on the Declarations page, the policy has a Professional Liability deductible of $50,000 for each claim that Citadel tenders to Kinsale for coverage.

15. The Professional Liability Coverage Form—Claims Made and Reported is found in Form AHL0005 1019.[2] In pertinent part, it provides:

**ALLIED HEALTH
PROFESSIONAL LIABILITY COVERAGE FORM—CLAIMS
MADE AND REPORTED**

THIS IS A CLAIMS MADE AND REPORTED POLICY. THE COVERAGE REQUIRES THAT A CLAIM BE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD AND BE REPORTED IN WRITING TO THE

---

[1] The policy includes a Schedule of Named Insureds provision. (*See* Form AHL5012 0610.)

[2] The policy has other grants of coverage, including Allied Health General Liability Coverage. (*See* Form AHL0001 1019.) The deductible and aggregate limit for general liability are the same as professional liability. At issue in this dispute, specifically in Count II and Count III, is 1 claim for general liability coverage that Citadel submitted to Kinsale.

COMPANY WITHIN THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF INSURANCE WILL BE REDUCED BY PAYMENT OF DAMAGES AND DEFENSE COSTS. PLEASE READ THE ENTIRE POLICY CAREFULLY. …

**SECTION I – COVERAGES**

**PROFESSIONAL LIABILITY**

    **1.**    **Insuring Agreement**

    **a.**    We will pay, in excess of the Deductible shown in the Declarations, those sums any "insured" becomes legally obligated to pay as "damages" and "defense costs" arising out of "bodily injury" because of a "health care incident" that takes place in the "coverage territory". However, we will have no duty to defend the "insured" against any "suit" seeking "damages" for "bodily injury" to which this insurance does not apply. We may, at our discretion, investigate any "health care incident" and settle any "claim" or "suit" that may result. But:

    (1)    The amount we will pay for "damages" is limited as described in Section **III – LIMITS OF INSURANCE AND DEDUCTIBLE**; and

    (2)    Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or "defense costs". In such case, we shall have the right to withdraw from further defense, payment or settlement of any "claim" by tendering control of such "claim" to you. You agree to accept such tender as a condition of this Policy. …

**SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**

**1.**    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.    "Insureds";

    b.    "Claims" made or "suits" brought; or

    c.    Persons making "claims" or bringing "suits".

**2.**    Subject to **3.** below, the Each Claim Limit is the most we will pay for the sum of:

      a.    "Damages" and "defense costs" incurred arising out of all "claims" from any one "health care incident" covered under this Policy**.**

**3.**    The Aggregate Limit is the most we will pay for the sum of:

      a.    "Damages" and "defense costs" incurred arising out of all "claims" from all "health care incidents" covered under this Policy.

The Limits of Insurance of this Coverage Form apply separately to each "policy period" and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

All "claims" based upon logically or causally connected injury shall be deemed to constitute a single "claim" and be subject to a single Each Claim Limit of Insurance.

Stacking of the Limits of Insurance of any one Coverage Form of this Policy with the Limits of Insurance of any other Coverage Form of this Policy is not permitted. …

16.    Also pertinent to this dispute, the policy includes a Policy Aggregate Endorsement, which is located in Form AHL2017 0919:

## POLICY AGGREGATE ENDORSEMENT …

### SCHEDULE

| Policy Aggregate Amount |
|---|
| $300,000 |

The following is added to **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE** for each Coverage Form of this Policy:

The Policy Aggregate amount shown in the Schedule above is the most we will pay for the sum of all "damages" and all Supplementary Payments or "defense costs" arising out of all claims under all Coverage Forms of this Policy. The General Aggregate, Aggregate Limit and Products/Completed Operations Aggregate as described in each Section is subject to the Policy Aggregate.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

## THE SETTLEMENT AGREEMENT BETWEEN KINSALE AND CITADEL

17. Approximately 32 patients and residents made claims against Citadel for "bodily injury" that they suffered while being cared for at Citadel's facilities.

18. Citadel tendered the claims to Kinsale for coverage under the professional liability part of its policy with Kinsale.

19. Kinsale accepted coverage for 18 of the 32 reported claims and assigned these claim numbers: 20331; 22866; 22790; 24071; 21003; 22819; 20535; 22431; 23631; 20541; 22237; 20546; 20876; 22544; 21911; 22826; 22680; and 21151.

20. Kinsale appointed counsel to defend Citadel's interests against the claims.

21. Kinsale has been fronting Citadel's deductible obligations in the form of "defense costs," which Citadel must then reimburse Kinsale. As of 02/23/2022, for the 18 professional liability claims as well as 1 general liability claim, Kinsale has paid $70,899.29 in "defense costs" that Citadel must reimburse.

22. Kinsale was concerned about the potential exposure to Citadel because of the number of claims relative to the limits of coverage that Citadel purchased. Moreover, beyond Citadel's significant deductible obligations, coverage under the policy is provided on an eroding basis so "defense costs" reduce the limit.

23. Kinsale approached Citadel about an overall strategy to protect Citadel's interests by attempting to schedule a global mediation conference where all the claimants would be invited. The objective at the conference would be to maximize the policy and expeditiously and efficiently resolve as many claims as possible. Indeed, in the jurisdiction where the claims were asserted against Citadel, these types of conferences are routine and encouraged in situations where there are too many claims relative to the available insurance.

24. Kinsale's counsel discussed the strategy with Citadel's acting representative, Tara Zimmerman. Ms. Zimmerman issued a settlement proposal to Kinsale on behalf of Citadel.

25. Ms. Zimmerman asked Kinsale to pay Citadel "the net aggregate limits," *i.e.*, the Aggregate Limit of $300,000 minus the applicable deductibles and defense costs, in exchange for a release of the professional liability coverage under the policy.

26. Ms. Zimmerman and Citadel's rationale was that Citadel has significant deductible obligations before Kinsale is required to pay and, even after the many deductibles are satisfied, the policy limits may be insufficient to resolve all the claims against Citadel, so it would be in Citadel's best interests for Citadel to accept a lump sum from Kinsale, and then maximize that money by handling, defending, and resolving the claims within its own discretion and as it deems expedient without any need to consult with Kinsale.

27. Kinsale accepted Citadel's offer.

28. Kinsale provided Ms. Zimmerman with a document memorializing the settlement.

29. After a while had passed, Kinsale's counsel followed up repeatedly with Ms. Zimmerman to see if she had any questions or notes regarding the document since she had not provided a signed copy.

30. Ms. Zimmerman stalled.

31. After some time passed, she eventually advised Kinsale's counsel that Yuval D. Bar-kokhba was replacing her as Citadel's representative and to speak to him about the settlement.

32. Kinsale's counsel contacted Mr. Bar-kokhba and invited him to review the document that was provided to Ms. Zimmerman memorializing the settlement between Citadel and Kinsale.

33. For several weeks, Kinsale and its counsel accommodated Mr. Bar-kokhba's many requests for telephone conferences, documents, and other information while he "got up to speed."

34. Mr. Bar-kokhba advised Kinsale's counsel that Citadel would still agree to let Kinsale buy out the professional liability coverage, but that Citadel now wants $150,000.

35. Kinsale once again accepted Citadel's new offer.

36. Mr. Bar-kokhba stalled.

37. Kinsale was held in abeyance for nearly six months while Citadel and Mr. Bar-kokhba considered the document memorializing the settlement, talked internally, met with the "board," inquired into "regulatory issues," and the like.

38. Despite repeated promises that made to Kinsale by Ms. Zimmerman and then by Mr. Bar-kokhba's, Citadel eventually advised Kinsale it was no longer willing to honor any settlement with Kinsale, and that Citadel would not sign any settlement document.

## COUNT I – BINDING SETTLEMENT

39. Kinsale incorporates paragraphs 1 through 38.

40. Citadel offered to allow Kinsale to "buy out" the policy.

41. Kinsale accepted Citadel's offer.

42. Citadel reneged on the settlement.

43. Citadel made a second offer to allow Kinsale to "buy out" the policy.

44. Kinsale once again accepted Citadel's offer.

45. And once again Citadel reneged on the settlement.

46. Regardless that Citadel refuses to memorialize their agreement in a document, the material terms of the settlement between Citadel and Kinsale have been agreed upon: Kinsale

would pay a sum certain to Citadel that would relieve Kinsale any further obligations under the policy.

47.   Kinsale seeks a declaration that the parties entered into an initial binding settlement to buy out the professional liability policy for $100,000, and then a second binding settlement to buy out the policy for $150,000. The settlement amounts that were agreed upon should be reduced by the amounts of Citadel's deductible obligations that Kinsale has been fronting, which as of 02/23/2022 total $70,899.29.

## COUNT II – DEDUCTIBLE OBLIGATION

48.   Kinsale incorporates paragraphs 1 through 38.

49.   As provided in the Insuring Agreement and also under the Limits of Insurance and Deductible section of the policy, Kinsale is only responsible for paying "damages" and "defense costs" that are "in excess of the applicable deductible stated in the Declarations." (*See* Form AHL0005 1019, Pg. 1, 7.)

50.   And as reflected in the Declarations page, Citadel is responsible for an Each Claim deductible of $50,000. (*See* Form AHL1010 0110, Pg. 1.)

51.   The $50,000 deductible applies to "damages" and "defense costs" and applies separately to each "claim" that is made against Citadel and presented to Kinsale for coverage under the policy. (*See* Form AHL0005 1019, Pg. 7.)

52.   There is no limit on the number or amount of deductibles Citadel is responsible for paying under the policy.

53.   At the moment, Citadel has tendered 32 separate professional liability claims to Kinsale for coverage under the policy, as well as 1 general liability claim, for a total of 33 claims

under the policy. Kinsale has accepted coverage for 18 of the professional liability claims and the 1 general liability claim.

54. Kinsale seeks a declaration that Citadel accordingly has deductible obligations of $950,000 ($50,000 x 19) before Kinsale is obligated pay under the policy in excess of that amount.

55. Kinsale also seeks a declaration that for each of the 19 claims for which Kinsale is currently providing coverage, Citadel has a deductible obligation of $50,000 before Kinsale is obligated to pay any "damages" or "defense costs," ultimately subject to an Each Claim limit of $100,000, and an Aggregate Limit of $300,000.

### COUNT II – POLICY LIMIT

56. Kinsale incorporates paragraphs 1 through 38.

57. As detailed in the Limits of Insurance and Deductible section of the policy, "[t]he Limits of Insurance shown in the Declaration" fix the most Kinsale will pay, regardless of the number of insureds, claim made or suits, or persons making claims or bringing suits. (See Form AHL0005 1019, Pg. 7.)

58. As reflected in the Declarations page, for Professional Liability the Each Claim Limit is $100,00, and the Aggregate Limit is $300,000. (*See* Form AHL1010 0110, Pg. 1.)

59. In addition, the policy limits are reduced by the payment of "defense costs" and Supplementary Payments and accordingly, there can be no additional amounts owed outside the limits set forth in the Declarations page of the policy.

60. At the moment, Kinsale has accepted coverage for 19 of the 33 claims that Citadel has tendered Kinsale for coverage under the policy.

61. Kinsale seeks a declaration that the Each Claim Limit of $100,000 is the total coverage available for each claim that Citadel tendered to Kinsale for coverage under the policy.

62. Kinsale also seeks a declaration that the Aggregate Limit of $300,000 is the total coverage available for all 19 claims for which Kinsale has agreed to provide coverage to Citadel under the policy.

## RELIEF REQUESTED

Kinsale respectfully requests that this Court:

a. Take jurisdiction and adjudicate the rights of the parties;

b. Declare that there is a binding settlement between Citadel and Kinsale to buy out the professional liability coverage minus the deductible amounts fronted by Kinsale; or

c. Declare that if there is no binding settlement agreement that the policy provides coverage of only $100,000 Each Claim as eroded by claims expenses minus the deductible amounts fronted by Kinsale; and

d. Declare that if there is no binding settlement agreement that the policy provides coverage of only $300,000 Aggregate as eroded by claims expenses minus the deductible amounts fronted by Kinsale; and

e. If there is no binding settlement agreement, find that Citadel must reimburse Kinsale all the deductibles that Kinsale has fronted; and

f. Award Kinsale all costs incurred to prosecute this action, as well as any other relief this Court deems equitable, just, and proper.

Respectfully submitted,

**CLYDE & CO US LLP**

By:  /s/ Leonard Sarmiento
Leonard Sarmiento
The Chrysler Building
405 Lexington Avenue, 16th Floor
New York, New York 0174
Tel: (212) 710-3900
Fax: (212) 710-3950
*Attorneys for Plaintiff, Kinsale Insurance Company*